## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOUGLAS BLANCHARD, JR.,**<br>   **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  22-260** |
| **TULANE UNIVERSITY,**<br>   **Defendant** | **SECTION: "E" (2)** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss filed by Defendant Tulane University seeking to dismiss Plaintiff Douglas Blanchard, Jr.'s amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Plaintiff opposes this motion.[2]

## BACKGROUND

The following facts are taken from Plaintiff's amended complaint.[3] In May 2018, Plaintiff, a Black man, graduated from Tulane University's Executive MBA Program and began seeking employment at Tulane.[4] In July 2018, Plaintiff accepted a position as the Interim Assistant Dean of Undergraduate Education in Defendant's A.B. Freeman School of Business.[5] The next month, the Office of Undergraduate Education underwent a reorganization, during which the Director, Alicia Edwards, allegedly was demoted after she filed a discrimination complaint against Mike Hogg, the Associate Dean of Undergraduate Programs at the business school.[6]

---

[1] R. Doc. 34.
[2] R. Doc. 40.
[3] R. Doc. 16.
[4] *Id.* at p. 3.
[5] *Id.*
[6] *Id.*

In September 2018, Plaintiff attended his first Undergraduate Studies Committee meeting, during which Mr. Hogg "sabotaged Plaintiff in the meeting, blaming Plaintiff for things that were done before Plaintiff was hired at Tulane."[7]  One month later, the Office of Undergraduate Education underwent a second reorganization, and the Undergraduate Office of Study Abroad was integrated into the Office of Undergraduate Education.[8] During the reorganization, the responsibilities of the former Executive Director of the Goldring Center were distributed to Plaintiff and another employee, Carol Spansel.[9] This reorganization increased Plaintiff's staff by three employees and his job responsibilities by over fifty percent.[10] As a result of this reorganization, Ms. Spansel, a white woman, was given a $1,500 salary increase, whereas Plaintiff was denied a salary increase by Defendant's human resources department.[11] In October 2018, Plaintiff complained of the discriminatory compensation to Defendant, and in November 2018, Plaintiff met with Ira Solomon, Dean of the Business School, who also denied his request for a salary increase.[12] Around the same time, at another USC meeting, Mr. Hogg accused Plaintiff of being the reason "things are failing in the Business School."[13] Mr. Hogg subsequently started blocking Plaintiff from meeting with administrators and stopped sharing information with Plaintiff necessary to his role.[14]

In December 2018, Plaintiff requested his job description be updated to match his new responsibilities, but his request was denied by Plaintiff's supervisor, Clifton Brown.[15]

---

[7] *Id.* at p. 4.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at p. 5.
[13] *Id.*
[14] *Id.*
[15] *Id.*

Plaintiff also sought assistance from Mr. Brown in managing Mr. Hogg, who still refused to collaborate with Plaintiff on projects outside of the business school.[16] Mr. Brown scheduled a joint meeting with Plaintiff and Mr. Hogg, during which Mr. Hogg criticized Plaintiff and his staff, but Mr. Hogg was unable to provide support for his criticisms.[17]

In January 2019, Mr. Hogg blamed Plaintiff for the issue of students needing so many independent studies credits in order to graduate, despite the problem being pervasive prior to Plaintiff's employment.[18] In March 2019, and repeatedly thereafter, Plaintiff requested his job description be updated and he be given a salary increase to match his new responsibilities.[19] However, the requests were denied or ignored.[20] In June 2019, Mr. Hogg began "a personal campaign attacking Plaintiff and his staff on emails and advising of students."[21] Plaintiff alleges "numerous emails were going back and forth on a myriad of topics and the emails were toxic."[22] Plaintiff reached out to his supervisor in July 2019 for assistance talking to Mr. Solomon, but Mr. Brown "informed Plaintiff that Solomon was biased towards Hogg and Plaintiff had no chance of changing Solomon's opinion of Mike Hogg."[23]

In September 2019, Mr. Hogg removed Plaintiff's permissions from a software program necessary to manage students' schedules.[24] In January 2020, Mr. Hogg yelled at Plaintiff in a common area of the Business School regarding a class being double-

---

[16] *Id.* at p. 6.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.* at p. 7.
[22] *Id.*
[23] *Id.*
[24] *Id.* at p. 8.

booked.[25] That same month, Mr. Hogg gave false information regarding Plaintiff's performance to Mr. Solomon, resulting in criticism from Mr. Solomon.[26]

Subsequently, in July 2020, Plaintiff contacted Tulane's Human Resources to file a complaint about Mr. Hogg's actions.[27] The next month, Plaintiff was denied the ability to take tuition-free courses at Tulane University, a benefit of his employment.[28] Plaintiff's requests to take tuition-free courses were subsequently denied in January and September 2021.[29] In November 2020, Plaintiff expressed interest in the Tulane Emerging Leaders program but was not nominated or considered.[30]   In February 2021, Plaintiff filed a formal complaint of race discrimination and hostile work environment with Defendant against Mr. Hogg.[31] After filing an official complaint, Plaintiff met with Defendant's General Counsel Howard Boyd, who allegedly stated that "Hogg had been a lot of problem for the university and Solomon has been protecting him."[32] Mr. Hogg was informed of Plaintiff's complaint thereafter.[33]

Following Plaintiff's complaint against Mr. Hogg, Plaintiff alleges he "was visited with antagonistic behavior and animosity by Hogg, Solomon, Guy, and Tulane's Human Resources."[34] Mr. Hogg started withholding critical information from Plaintiff; Mr. Solomon refused to sign documents necessary for Plaintiff's role; and Ms. Guy significantly limited communication with Plaintiff and prevented Plaintiff from meeting

---

[25] *Id.*
[26] *Id.*
[27] *Id.* at p. 9.
[28] *Id.*
[29] *Id.*
[30] *Id.* at p. 10.
[31] *Id.* at p. 11.
[32] *Id.*
[33] *Id.*
[34] *Id.* at p. 13.

with Associate Deans outside of the Business School.[35] In June 2021, Ms. Guy and Mr. Hogg began a campaign to discredit Plaintiff at the university.[36] In July 2021, Plaintiff again requested his job description be updated, which was denied by Ms. Guy.[37] In August 2021, Plaintiff was pushed out of the strategic side of the Business School by Ms. Guy.[38] Throughout November and December 2021, Ms. Guy chastised Plaintiff, denied his requests for meetings, removed the study abroad program from Plaintiff's area of responsibility, and baselessly blamed Plaintiff for failing to complete deliverables that were ultimately her responsibility.[39]

On January 7, 2022, Plaintiff was issued a disciplinary action by Ms. Guy and Tulane's Human Resources Manager, Christina Wallace.[40] Plaintiff alleges the disciplinary action was based on false and misleading allegations.[41] Plaintiff appealed the disciplinary action, and the appeal was still under investigation at the time the instant action was commenced.[42] In December 2021, Plaintiff filed an EEOC charge against Defendant, and the EEOC issued Plaintiff a notice of his right to sue on December 14, 2021.[43] Finally, Plaintiff received his 2021 calendar year performance evaluation from Ms. Guy on April 5, 2021, in which Plaintiff received unwarranted negative reviews, resulting in Plaintiff receiving the minimum 2% merit increase, while other employees in Plaintiff's department received 4.5% merit increases.[44]

---

[35] *Id.*
[36] *Id.* at p. 14.
[37] *Id.* at p. 15.
[38] *Id.*
[39] *Id.*
[40] *Id.* at p. 16.
[41] *Id.*
[42] *Id.*
[43] *Id.* at p. 2.
[44] *Id.* at p. 17.

Plaintiff alleges he "was subjected to persistent and pervasive hostile work environment by Hogg, supported and acquiesced in by Solomon, which included micro-aggressions, hostility, mistreatment, defamatory comments, unfounded accusations, and refusal/failure to provide training because of his race."[45] Plaintiff alleges "Hogg's hostility towards Plaintiff was racially motivated as Hogg did not engage in similar disrespectful and offensive conduct and behavior toward the Caucasian co-workers in the School of Business."[46] Moreover, Plaintiff alleges he "engaged in . . . protected activities . . . [and] has been and continues to be subjected to retaliatory discipline, unfounded criticisms by Megan Guy, retaliatory harassment and hostile work environment by Tulane, through his supervisors and Tulane's Human Resources."[47] Plaintiff further alleges Mr. Hogg had been the subject of prior complaints of race discrimination by other employees of Defendant, yet Defendant "failed to discipline and take appropriate remedial actions . . . cover[ing] up Hogg's discriminatory actions with so called 'investigations' conducted in bad faith.'"[48]

Plaintiff has several claims against Defendant. For clarity, the Court summarizes the claims raised by Plaintiff below. Plaintiff brings discrimination and retaliation claims under both Section 1981 and under Title VII of the Civil Rights Act.[49] Plaintiff includes four counts in his statement of claims:

1. "The acts and conduct of Defendant Tulane . . . where Plaintiff was subjected to racially motivated denial of compensation, race discriminatory unequal compensation, race discriminatory denial of

---

[45] *Id.* at p. 12.
[46] *Id.* at p. 9.
[47] *Id.* at p. 17.
[48] *Id.* at p. 13.
[49] *Id.* at p. 17-20. In its motion to dismiss, Defendant also seeks dismissal of Plaintiff's Equal Pay Act discrimination claim. R. Doc. 43-1 at p. 7. However, as Plaintiff clarifies in his opposition, Plaintiff does not bring a claim, nor assert any legal theory, under the Equal Pay Act. R. Doc. 40 at p. 2. Because there is no claim for the Court to consider, Defendant's motion on this particular claim is denied.

employment opportunities and benefits, and race motivated harassment and hostile work environment are violations of Section 1981 of the Civil Rights Act."

2. "The acts and conduct of Defendant . . . where Plaintiff was subjected to adverse employment actions, including but not limited to retaliatory harassment and retaliatory disciplinary actions, after Plaintiff complained of and/or opposed race discrimination by Defendant, are violations of the Civil Rights Act, 42 U.S.C. § 1981."

3. "The acts and conduct of Defendant Tulane . . . where Plaintiff was subjected to racially and gender motivated denial of compensation and compensation practices in violation of the Lilly Ledbetter Act, race and gender discriminatory denial of employment opportunities and benefits, racially motivated harassment and hostile work environment are violations of Title VII of the Civil Rights Act as Amended."

4. "The acts and conduct of Defendant . . . where Plaintiff was subjected to adverse employment actions, including but not limited to retaliatory harassment and retaliatory disciplinary actions, after Plaintiff complained of and/or opposed race and gender discrimination by Defendant, are violations of the Civil Rights Act, Title VII."[50]

In sum, under 42 U.S.C. § 1981, alleging discrimination based on his race, and under Title VII, alleging discrimination based on race and gender, Plaintiff brings the following claims under each: (1) discrimination based on unequal compensation and benefits; (2) hostile work environment;[51] (3) retaliatory discrimination on the basis of "retaliatory disciplinary actions;" and (4) retaliatory hostile work environment.

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle

---

[50] *Id.*

[51] The Court construes Plaintiff's allegations of harassment as a hostile work environment claim under Title VII and § 1981. *Martin v. American Midstream Partners, LP*, 386 F. Supp. 3d 733, 740 n.19 (E.D. La. 2019) (construing a count in the plaintiffs' complaint entitled "harassment" as a hostile work environment claim because "[a]llegations of workplace harassment are included in a claim of hostile work environment under Title VII").

him to relief.[52]   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[53] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[54] However, the court does not accept as true legal conclusions or mere conclusory statements,[55] and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[56] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[57]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[58] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."[59] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[60]

"The Supreme Court has rejected the argument that a Title VII complaint requires greater 'particularity,' because this would 'too narrowly constrict the rule of the pleadings.' Consequently, in employment discrimination cases, 'the ordinary rules of assessing the sufficiency of a complaint apply.' Consequently, 'an employment

---

[52] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[53] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[54] *Id.*
[55] *Id.*
[56] *S. Christian Leadership Conf. v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[57] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[58] *Twombly*, 550 U.S. at 555.
[59] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).
[60] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (unpublished) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

discrimination plaintiff need not plead a prima facie case' in order to survive a Rule 12 motion.'"[61] "When a federal court reviews the sufficiency of the complaint . . . its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claim is entitled to offer evidence to support the claims."[62]

## LAW AND ANALYSIS

### I.    Plaintiff's Title VII Hostile Work Environment, Retaliation, and Retaliatory Hostile Work Environment Claims.

In its motion to dismiss, Defendant seeks dismissal of Plaintiff's non-wage-based claims for discrimination and retaliation under Title VII.[63] Defendant characterizes Plaintiff's Title VII claims as either "wage-based," meaning Plaintiff alleges discrimination and retaliation resulted in denied or unequal compensation and benefits, or "non-wage-based," meaning Plaintiff alleges discrimination and retaliation resulted in harassment and a hostile work environment.[64] The Court construes Defendant's motion to dismiss Plaintiff's "non-wage-based" claims as seeking dismissal of the following claims under Title VII: hostile work environment; retaliation; and retaliatory hostile work environment.

Title VII makes it unlawful for an employer to discriminate against any individual "with respect to compensation, terms, conditions, or privileges of employment, because of an individual's race, color, religion, sex, or national origin."[65] A complainant must file a timely charge with the Equal Employment Opportunity Commission (EEOC) prior to

---

[61] *Sandifer v. Donahoe*, No. 14-2523, 2015 WL 5552644, at *4 (E.D. La. Sept. 16, 2015) (internal citations omitted).
[62] *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).
[63] R. Doc. 34-1 at pp. 17-19.
[64] *Id.* at p. 17.
[65] 42 U.S.C. § 2000e(a)(1) (2018).

commencing a civil action in federal court under Title VII.[66] In assessing whether a charge properly exhausts a particular claim, the EEOC charge is to be construed broadly, as Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship."[67] However, the court will find a claim is exhausted only when it could "reasonably be expected to grow out of the charge of discrimination."[68] An employee may file a civil action "not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination."[69]

### A.   Defendant's Motion to Dismiss Plaintiff's Title VII Hostile Work Environment Claim for Failure to Exhaust His Administrative Remedies Is Denied.

In Defendant's motion, it argues Plaintiff's non-wage-based claims are untimely because Plaintiff has not exhausted his administrative remedies as to these claims.[70] In his opposition, Plaintiff addresses only his wage-based claims, stating "Plaintiff's Title VII race and gender discriminatory *compensation claims* are not time barred and Defendant's motion to dismiss these claims must be denied."[71] Defendant replied, stating "Tulane never asserted [the wage-based claims] were not [timely] in its Motion."[72] In fact, Defendant admits "the only allegations Plaintiff administratively exhausted were his *wage-based* Title VII race and sex discrimination and retaliation claims."[73] Further,

---

[66] 42 U.S.C. § 2000e-5 (2018).
[67] *McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 273 (5th Cir. 2008) (citing *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465 (5th Cir. 1970)).
[68] Sanchez, 431 F.2d at 465.
[69] *Fellows v. Universal Rests., Inc.,* 701 F.2d 447, 451 (5th Cir. 1983).
[70] R. Doc. 34-1 at pp. 17-19.
[71] R. Doc. 40 at p. 22 (emphasis added).
[72] R. Doc. 43 at p. 6 (emphasis added).
[73] *Id.*

Defendant notes Plaintiff "utterly fails to address that he never raised allegations of harassment or hostile work environment in his EEOC Charge."[74] Although Plaintiff did not properly address Defendant's argument in his opposition, the Court considers the merits of the argument below.

The United States Court of Appeals for the Fifth Circuit outlined the scope of the Title VII exhaustion requirement in detail in *Pacheco v. Mineta*.[75] The Fifth Circuit described:

> The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers. On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, "a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." With that balance in mind, this court interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.[76]

Nonetheless, "discrimination and harassment are 'distinct' claims."[77] "For a claim of hostile work environment to reasonably be expected to grow out of an employee's charge of discrimination, the employee must allege more than just discrete actions of discrimination."[78]

---

[74] *Id.*
[75] 448 F.3d 783 (2006).
[76] *Id.* at 788-89 (internal citations omitted).
[77] *Trevino v. SAIA Motor Freight Line, LLC*, No. 4:20-cv-00825, 2021 WL 1009317, at *4 (N.D. Tex. Jan. 26, 2021) (citing *Gates v. Lyondell Petrochemical Co.*, 227 F. App'x 409, 409 (5th Cir. 2007)).
[78] *Id.*

In the exhaustion inquiry, the Fifth Circuit has considered documents beyond just the EEOC charge itself filed as part of the formal charge of discrimination.[79] In *Patton v. Jacobs Engineering Group, Inc.*, the Fifth Circuit held an intake questionnaire submitted by the plaintiff at the beginning of the EEOC's investigation should be construed as part of the EEOC charge for the purpose of determining whether a plaintiff's claim could reasonably be expected to grow out of his charge.[80] In *Patton*, even though the plaintiff did not raise a failure to accommodate claim in his EEOC charge document, the plaintiff did address the claim in detail in his EEOC questionnaire.[81] Considering both documents, the Fifth Circuit reasoned the scope of the EEOC investigation growing out of both the charge *and the questionnaire* could reasonably be expected to include the failure to accommodate claim.[82] The Fifth Circuit concluded "[c]onstruing the scope of [the plaintiff's] charge liberally," the plaintiff had exhausted his administrative remedies as to the failure to accommodate claim.[83]

In Plaintiff's EEOC charge, Plaintiff alleged, in full, the following:

I was hired by Tulane University, in August 2018, most recently as an Assistant Dean. I have been discriminated against because of my race (Black), Sex (Male) EPA, harassment and retaliated against *by being paid less than that of Carol Spansel (CAU) (F) in October 2018*. After I raised the question about the pay, I have been harassed and retaliated against beginning October 2018, *by being denied the ability to take classes by the influence of the Dean Ira Solomon and Associate Dean Mike Hogg*. According to the company, the position did not warrant extra pay, and was told regarding classes, the classes were denied. *I believe I have been discriminated against.*[84]

---

[79] *See Patton v. Jacobs Eng'g Grp.*, 874 F.3d 437, 443 (5th Cir. 2017).
[80] *Id.*
[81] *Id.*
[82] *Id.* at 444.
[83] *Id.*
[84] R. Doc. 34-2 at p. 1 (emphasis added).

While Plaintiff used the terms "harassment" and "harassed" in his EEOC charge, he relies only on discrete actions of discrimination that are insufficient for the Court to find Plaintiff's hostile work environment claim had been reasonably raised.[85] However, in considering Plaintiff's EEOC Inquiry filed in the same investigation, the Court finds that the scope of the EEOC investigation growing out of the charge and the Inquiry could reasonably be expected to include a hostile work environment claim. In Plaintiff's EEOC Inquiry, he alleged, *inter alia*, the following facts: (1) "[f]or more than 2 years, I have been subjected to microaggression and microinequities";[86] (2) "my colleague, a white male, has repeatedly used his influence to attack, defame, and sabotage m[e] and my department['s] work[, c]reating a hostile environment and a toxic workplace";[87] (3) "they began a campaign to harass me using his friends and peers . . . incit[ing] the crowd to verbally attack and denigrate me in meetings."[88] As in *Patton*, it is clear from Plaintiff's responses to the EEOC Inquiry that the facts suggest a potential hostile work environment sufficient to spark investigation into such a claim. In fact, Plaintiff *explicitly states* the existence of a hostile work environment in his inquiry.[89] The fact that Plaintiff did not include all the facts in his EEOC charge is not fatal to his claim.

Construing the scope of Plaintiff's EEOC charge liberally, the Court finds that Plaintiff's hostile work environment claim could reasonably be expected to grow out of his charge of discrimination. Accordingly, the Court finds Plaintiff has exhausted his administrative remedies with respect to his hostile work environment claim.

---

[85] *Id.*
[86] See Attachment A at p. 9.
[87] *Id.* at p. 10.
[88] *Id.*
[89] *Id.*

**B.  Defendant's Motion to Dismiss Plaintiff's Retaliation Claim for Failure to Exhaust His Administrative Remedies Is Denied.**

Plaintiff is not required to administratively exhaust his retaliation claim. Generally, a plaintiff must first exhaust his or her administrative remedies by filing an EEOC charge before commencing a civil action in federal court. However, the Fifth Circuit has carved an exception for certain retaliation claims. In *Gupta v. East Texas State University*, the Fifth Circuit held "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the Court."[90] This is so because "[i]t is the nature of retaliation claims that they arise after the filing of the EEOC charge."[91] Requiring a double filing "would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII."[92]

Plaintiff alleges that the disciplinary action he was subject to on January 7, 2022, was part of Ms. Guy's "on-going retaliation for filing [a] race discrimination complaint."[93] Because Plaintiff's retaliation claim grows out of an earlier administrative charge, this Court has ancillary jurisdiction over the claim. Accordingly, Defendant's motion to dismiss Plaintiff's retaliation claim is denied.

**C.  Defendant's Motion to Dismiss Plaintiff's Retaliatory Hostile Work Environment is Granted.**

The Court need not reach the question of whether Plaintiff's retaliatory hostile work environment claim is administratively exhausted. A retaliatory hostile work

---

[90] *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981).
[91] *Id.*
[92] *Id.*
[93] R. Doc. 16 at p. 16.

environment claim is not recognized by the Fifth Circuit.[94] Accordingly, Defendant's motion to dismiss Plaintiff's retaliatory hostile work environment claim is granted.

## II. Defendant's Motion to Dismiss Plaintiff's Hostile Work Environment Claim Under Title VII and 42 U.S.C. § 1981 for Failure to Adequately Allege a Claim Is Denied.

Defendant seeks dismissal of Plaintiff's harassment, *i.e.*, hostile work environment, claims under Title VII and § 1981. Defendant argues "Plaintiff's alleged acts of work criticism by Hogg and Guy, even if accepted as true, do not rise to the type of behavior prohibited by Title VII and Section 1981."[95] Plaintiff responds: "[n]one of Plaintiff's Caucasian comparators was subjected to similar hostility, harassment and derogatory conduct by Hogg and Hogg's harassment and hostility toward Plaintiff was persistent and pervasive."[96]

"[A] [p]laintiff may establish a violation . . . by proving that the workplace is permeated with discriminatory intimidation, ridicule and insult that is so severe or pervasive that it alters the conditions of employment and creates a hostile or abusive working environment."[97] "In order to establish a claim that discriminatory harassment has created an abusive or hostile working environment, a plaintiff must prove the following four elements in cases where it is asserted that a supervisor with immediate or successively higher authority perpetrated the harassment: (1) that [he] belongs to a protected class; (2) that [he] was subjected to unwelcome harassment; (3) that the harassment was based on a prohibited ground, i.e., race, gender, and (4) that the

---

[94] *Carpenter v. Haaland*, No. 19-13208, 2021 WL 1198261, at *11 n.139 (E.D. La. Mar. 30, 2021).

[95] R. Doc. 34-1 at p. 20.

[96] R. Doc. 40 at pp. 19-20.

[97] *Butler v. La. Dep't of Health & Hosps.*, CIV A 07-723-SCR, 2009 WL 2382556, at *5 (M.D. La. July 31, 2009).

harassment affected a term, condition, or privilege of employment."[98] The inquiry for the Court at this stage is "whether the complaint contains factual allegations sufficient to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claims."[99]

Defendant did not dispute elements one and two in its motion to dismiss.[100] Accordingly, the Court will address only elements three and four. Defendant first argues Plaintiff's claim should be dismissed because "[c]ritically, Plaintiff alleges no derogatory comments whatsoever concerning his race or sex."[101] In opposition, Plaintiff argues "[n]one of Plaintiff's Caucasian comparators was subjected to similar hostility, harassment and derogatory conduct."[102] Moreover, Plaintiff states that Mr. Hogg was also the subject of prior complaints of race discrimination at Tulane by other employees, including the former Director of the Office of Undergraduate Education, Alicia Edwards.[103] Taking Plaintiff's allegations as true, Plaintiff's complaint contains factual allegations sufficient to raise a reasonable expectation that discovery will reveal evidence of racial animus.

Next, Defendant argues Plaintiff has not put forth sufficient facts to allege that the harassment affected a term, condition, or privilege of Plaintiff's employment—element four of the hostile work environment claim. "Harassment affects a term, condition, or privilege of employment when it is '*severe* or *pervasive*.'"[104] To establish the fourth

---

[98] *Id.* (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir.1999)).

[99] *Sandifer*, No. 14-2523, 2015 WL 5552644, at *4.

[100] R. Doc. 34-1 at pp. 19-21.

[101] *Id.* at p. 20.

[102] R. Doc. 40 at p. 19.

[103] R. Doc. 16 at pp. 3, 16.

[104] *Russel v. Univ. of Tex. of Permian Basinl*, 234 F. App'x  195, 205 (5th Cir. 2007) (quoting *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 482 (5th Cir. 2002)) (emphasis added).

element, a plaintiff must show that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[105] Courts must look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" in determining whether conduct is hostile or abusive.[106] "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[107]

In this case, it is clear from Plaintiff's complaint that he found Defendant's employees' conduct to be subjectively offensive.[108] Therefore, the question before the Court is whether the complained-of conduct was also objectively offensive. The Court finds Plaintiff has carried his burden on this element.

In his complaint, Plaintiff alleges, *inter alia*, the following facts in support of his hostile work environment claim: (1) Mr. Hogg sabotaged Plaintiff in a meeting, blaming him for things done before Plaintiff's employment;[109] (2) at a second meeting, Mr. Hogg blamed Plaintiff for being the reason "things are failing in the Business School;"[110] (3) Mr. Hogg blocked Plaintiff from meetings with administrations outside of the Business School and stopped sharing information with Plaintiff that was required to support activities for

---

[105] *La Day*, 302 F.3d at 482 (quoting *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998)) (internal quotation marks omitted).
[106] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998); *see also Calmes v. JPMorgan Chase Bank*, 943 F. Supp. 2d 666, 680 (E.D. La. 2013).
[107] *Id.* at 788 (internal quotation marks omitted).
[108] R. Doc. 16 at p. 12.
[109] *Id.* at p. 4.
[110] *Id.* at p. 5.

campus partners;[111] (4) Mr. Hogg baselessly criticized Plaintiff's staff in a meeting;[112] (5) Mr. Hogg suggested that Plaintiff and his office are the reasons students need so many independent studies in order to graduate;[113] (6) Mr. Hogg constantly subjected Plaintiff to unfounded criticism based on false allegations;[114] (7) Mr. Hogg ran a personal campaign attacking Plaintiff in toxic emails and while advising students;[115] (8) Mr. Hogg removed Plaintiff's permissions in a necessary software program;[116] (9) Mr. Hogg fed Plaintiff's supervisor incorrect information about his job performance;[117] (10) Mr. Hogg "would constantly yell at Plaintiff in public, in meetings, in front of students, and make false statements about Plaintiff to others that Mr. Hogg knew to be false";[118] (11) Mr. Hogg would "make up intentionally false allegations about Plaintiff."[119]

Taking Plaintiff's allegations as true, the Court finds Plaintiff has sufficiently alleged the elements of a hostile work environment. First, Plaintiff has alleged conduct that a reasonable employee would find to be humiliating and offensive. Moreover, the conduct was pervasive, allegedly beginning in September 2018 and continued until at least January 2020.[120] Finally, Plaintiff alleged facts sufficient to show that his work performance was affected. Plaintiff alleges that, as a result of the hostile work environment, he was blocked from necessary meetings, stopped receiving information required to support activities for campus partners, removed permissions in a necessary

---

[111] *Id.* at p. 6.
[112] *Id.*
[113] *Id.*
[114] *Id.*
[115] *Id.* at p. 7.
[116] *Id.* at p. 8.
[117] *Id.*
[118] *Id.* at pp. 11-12.
[119] *Id.* at p. 12.
[120] Plaintiff's amended complaint alleges misconduct in at least the following months: September, October, and November 2018; January, March, June, and September 2019; and January 2020.

software program, and fed Plaintiff's supervisor incorrect information about his job performance, actions that interfered with Plaintiff's work performance.

Plaintiff's complaint contains factual allegations sufficient to raise a reasonable expectation that discovery will reveal evidence of each element of his claim. Accordingly, Defendant's motion to dismiss as to these claims is denied.

## III. Defendant's Motion to Dismiss Plaintiff's Title VII and 42 U.S.C. § 1981 Wage Discrimination Claims for Failure to Adequately Allege a Claim Is Denied.

Plaintiff's alleges Defendant committed wage discrimination under Title VII and § 1981 because Plaintiff was subjected to "racially motivated denial of compensation, race discriminatory unequal compensation, [and] race discriminatory denial of employment opportunities and benefits."[121] Defendant argues the claim should be dismissed because "[t]he Amended Complaint is silent as to any allegations that show Plaintiff received 'unequal pay for equal work' or was treated less favorably [than other employees] 'under nearly identical circumstances.'"[122]

"In order to make out a prima facie case of pay discrimination under § 1981 or Title VII, a plaintiff must show (1) 'that he was a member of a protected class;' (2) 'that he was paid less than a non-member;" and (3) 'that his circumstances are "nearly identical" to those of' the better-paid non-member."[123] At the motion to dismiss phase, "'a plaintiff need not make out a prima facie case of discrimination'"[124] but instead "must plead 'sufficient facts on all of the ultimate elements' to make her case plausible."[125] "To

---

[121] R. Doc. 16 at pp. 17, 19.
[122] R. Doc. 34-1 at p. 13.
[123] *Mengistu v. Miss. Valley State Univ.*, 716 F. App'x 331, 333-34 (5th Cir. 2018).
[124] *Jenkins v. Louisiana Workforce Commission*, 713 F. App'x 242, 244 (5th Cir. 2017) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).
[125] *Id.* (quoting *Chhim v. Univ. of Tex.*, 836 F.3d 467, 470 (5th Cir. 2016)). Both Plaintiff and Defendant cite to *McDonnell Douglas Corp. v. Green* for the burden-shifting framework outlined therein. R. Doc. 34-1 at

establish a prima facie case of discrimination based on a denial of a raise, a plaintiff 'must show that similarly situated employees who were not [in the same protected class] received raises during the same period.'"[126] "Within the context of pay increases, a plaintiff 'must show that her circumstances are nearly identical to those of a better-paid employee who is not a member of the protected class.'"[127] "The job contents, not the job title classification or description, determine whether the circumstances are nearly identical."[128]

Defendants challenge elements two and three of this inquiry. Defendant states "[t]he Amended Complaint is silent as to any allegations that show Plaintiff received 'unequal pay for equal work' or was treated less favorably 'under nearly identical circumstances.'"[129] In opposition, Plaintiff identifies Carol Spansel, a white female, as a comparator to whom he was allegedly paid less for equal work.[130] Plaintiff argues while "the duties of the former Executive Director of Goldring Center were shared and assigned equally to Plaintiff and Spansel by Dean Solomon . . . [yet] Plaintiff was the only one of the two who was denied [a] compensation increase for the added job duties."[131] Instead, Carol Spansel "was given a $1,500 salary increase as a result of her increase in responsibilities."[132]

---

p. 11 (Defendant's motion to dismiss); R. Doc. 40 at p. 14 (Plaintiff's opposition). The Supreme Court has held, and the Fifth Circuit has recognized, that the *McDonnell Douglas* standard does not govern at the motion to dismiss stage. *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1210 (5th Cir. 2021) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (explaining that *McDonnell Douglas* is "an evidentiary standard, not a pleading requirement")).

[126] *Loomis v. Starkville Miss. Pub. Sch. Dist.*, 150 F. Supp. 3d 730, 747 (N.D. Miss. 2015) (quoting *Vital v. Nat'l Oilwell Varco*, No. H-12-1357, 2014 WL 4983485, at *20 (S.D. Tex. Sept. 30, 2014)).

[127] *Id.* (quoting *Goring v. Bd. of Sup'rs of La. State Univ.*, 932 F. Supp. 2d 642, 651 (M.D. La. 2010)).

[128] *Id.* (quoting *Goring*, 932 F. Supp. 2d at 651).

[129] R. Doc. 34-1 at p. 13.

[130] R. Doc. 40 at p. 17.

[131] *Id.*

[132] *Id.* at p. 15. Plaintiff also alleges that he was denied the ability to take classes, a benefit of employment at Tulane University. *Id.* at p. 8. Unlike where Plaintiff provides a comparator for his unequal compensation claim, Plaintiff did not provide examples of other employees not in the protected classes who were *granted*

The Court finds, taking Plaintiff's allegations as true, Plaintiff has carried his burden of alleging sufficient facts to make his case plausible as to each element of a wage discrimination claim. First, Plaintiff has sufficiently alleged he was paid less than a non-member. Plaintiff alleged Carol Spansel, a white female, received a $1,500 salary increase, and he did not.[133] Second, Plaintiff alleged that his circumstances were nearly identical to those of Ms. Spansel. Although the facts indicate that Ms. Spansel and Plaintiff did not have the same title, Plaintiff alleges "the duties of the former Executive Director of the Goldring Center were shared and assigned equally to Plaintiff and Spansel by Dean Solomon."[134] Moreover, as the Court has noted, it is the contents, as opposed to the title, that is determinative.[135] In contrast to Ms. Spansel, Plaintiff did not receive compensation for this alleged equal division of job duties.

Taking Plaintiff's allegations as true, Plaintiff's complaint contains factual allegations sufficient to raise a reasonable expectation that discovery will reveal evidence of each element of his claim. Accordingly, Defendant's motion to dismiss as to this claim is denied.

## IV. Defendant's Motion to Dismiss Plaintiff's Title VII and 42 U.S.C. § 1981 Retaliation Claims for Failure to Adequately Allege a Claim Is Denied.

Plaintiff raises Title VII and § 1981 retaliation claims on the basis that he was subjected to retaliatory disciplinary action.[136] Defendant argues Plaintiff's retaliation

---

the ability to take classes. Although the Court does not find this alleged aspect of discrimination persuasive, the Court finds Plaintiff has sufficiently alleged a claim of wage discrimination independent of his denial of the ability to receive a tuition waiver.

[133] *Id.*

[134] *Id.* at p. 17.

[135] *Loomis*, 150 F. Supp. 3d at 747.

[136] Plaintiff's retaliatory hostile work environment claim is dismissed, because the Fifth Circuit does not recognize such a cause of action. Accordingly, Plaintiff's only remaining claim is a general retaliation claim arising under Title VII and § 1981.

claims should be dismissed because Plaintiff has not adequately pleaded the existence of an adverse employment action nor met the causation element of a retaliation claim.[137]

"Title VII prohibits an employer from taking adverse employment action against an employee because he engages in a protected activity."[138] "Section 1981 mirrors the requirements of Title VII in this context.[139] To establish a prima facie case of retaliation under both Section 1981 and Title VII, "a plaintiff must show that (1) he participated in an activity protected under the state; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action."[140] Defendant does not contest whether Plaintiff participated in a protected activity. Accordingly, the Court will address only elements two and three.

As to element two, the Court finds Plaintiff has adequately pleaded the existence of an adverse employment action. "An 'adverse employment action' for the second prong, in a retaliation claim only, is not limited to the Fifth Circuit's previous 'ultimate employment decision' standard."[141] "The Supreme Court has held that 'the standard for retaliation is broader than for discrimination' in that such actions are not limited to tangible employment actions. For purposes of a retaliation claim, an adverse employment action is one that 'a reasonable employee would have found . . . to be materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[142]

---

[137] R. Doc. 34-1 at pp. 21-24.
[138] *Carpenter*, No. 19-13208, 2021 WL 1198261, at *4.
[139] *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).
[140] *Carpenter*, No. 19-13208, 2021 WL 1198261, at *4.
[141] *Cephus v. Tex. Health and Human Servs. Comm'n*, 146 F. Supp. 3d 818, 831 (5th S.D. Tex. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).
[142] *Id.*; *see also McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (quoting *Burlington*, 548 U.S. at 68).

Plaintiff alleges he was subject to materially adverse employment actions, including the following: (1) Ms. Guy refused to make changes to his job description;[143] (2) Ms. Guy refused to approve the promotion of an individual recommended by Plaintiff;[144] (3) Ms. Guy denied Plaintiff's request to take tuition-free classes;[145] (4) Ms. Guy refused to meet with Plaintiff and ignored Plaintiff's emails;[146] (5) Ms. Guy constantly chastised Plaintiff;[147] (6) Ms. Guy removed job responsibilities from Plaintiff;[148] (7) Ms. Guy blamed Plaintiff for not completing a survey that Ms. Guy did not complete;[149] (8) Plaintiff was issued a disciplinary action by Ms. Guy and Tulane's HR Manager based on false and misleading allegations;[150] (9) Plaintiff was not nominated for the Tulane Emerging Leaders program;[151] and (10) Plaintiff received unwarranted negative reviews from Ms. Guy in his calendar year performance evaluation, resulting in receiving the minimum 2% merit increase, where other employees received a 4.5% merit increase.[152]

The Court finds a decision by another section of this Court persuasive in the instant action. In *Soublet v. Louisiana Tax Commission*, the court held that a decreased performance evaluation resulting in the denial of a merit increase was a materially adverse employment action because it "would dissuade a reasonable worker from supporting a charge of discrimination."[153] Accordingly, without addressing other allegedly

---

[143] R. Doc. 40 at p. 10.
[144] *Id.*
[145] *Id.*
[146] *Id.*
[147] *Id.*
[148] *Id.*
[149] *Id.* at pp. 10-11.
[150] *Id.* at p. 11.
[151] *Id.*
[152] *Id.* at pp. 11-12.
[153] 766 F. Supp. 2d, 735 (E.D. La. 2011).

retaliatory actions by Defendant, Plaintiff has adequately pleaded element two—that his employer took a materially adverse employment action against him.

As to element three, Plaintiff must demonstrate a causal connection exists between the protected activity and the adverse action. "The ultimate determination in a retaliation case is whether the plaintiff's protected conduct was a but-for cause of the [employment decision]."[154] At the motion to dismiss stage, however, "[t]he causal connection standard . . . is much less stringent than the ultimate but-for cause determination in such a case."[155] At this stage, "[a] plaintiff need not prove that retaliation was the sole factor motivating the [employment] decision."[156] A causal link between the adverse employment action and the protected activity can be satisfied "simply by showing close enough timing between [the] protected activity and [the] adverse employment action."[157]

Plaintiff may rely upon temporal proximity between the protected activity and adverse employment action to establish a causal link at the motion to dismiss stage. There exists no hard-and-fast rule to determine how much of a gap in time between the protected activity and adverse employment action is too much. The Fifth Circuit has held a period of four months between the protected activity and the adverse employment action may be enough to enable a reasonable jury to infer causation.[158] In a different case, the Fifth Circuit held two and one-half months, *standing alone*, is not within the very close proximity necessary to establish causation.[159] These differing outcomes reveal the fact-intensive nature of the inquiry involved in determining whether a plaintiff may

---

[154] *Gogreve v. Downtown Dev. Dist.*, 426 F. Supp. 2d 383, 391 (E.D. La. 2006).
[155] *Id.*
[156] *Id.*
[157] *Abbood v. Tex. Health and Human Servs. Comm'n*, 783 F. Appx. 459, 463 (5th Cir. 2019).
[158] *Feist v. La. Dept. of Justice*, 730 F.3d 450, 454-55 (5th Cir. 2013).
[159] *Hill v. Brown*, No. 3:21-02516, 2022 WL 3094329, at *12 (W.D. La. July 19, 2022).

ultimately rely upon temporal proximity to establish causation. Plaintiff filed his EEOC charge of discrimination on December 10, 2021, and four months later, received a negative calendar year performance evaluation, resulting in only the minimum salary increase, on April 5, 2022.[160] Plaintiff has stated a plausible claim of relief sufficient to survive a motion to dismiss. Accordingly, Defendant's motion to dismiss Plaintiff's retaliation claims is denied.

## CONCLUSION

**IT IS ORDERED** that Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part.**

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss Plaintiff's retaliatory hostile work environment claim is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss Plaintiff's remaining claims is **DENIED**.

**New Orleans, Louisiana, this 21st day of October, 2022.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[160] R. Doc. 40 at pp. 11-12.